UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROSALIND M. CROSS,               )
                                 )
          Plaintiff,             )
                                 )
v.                               )          Case No. 4:23-CV-1415-ZMB
                                 )
EDWARD FORST,[1] *Archivist,*    )
*National Records Administration*,)
                                 )
          Defendant.             )

## MEMORANDUM AND ORDER

Before the Court is Defendant Edward Forst's Motion for Summary Judgment. Doc. 44.

Even after considering the record in the light most favorable to Plaintiff Rosalind M. Cross, the

Court concludes that Forst is entitled to summary judgment on all claims and grants his motion.

## BACKGROUND

I.   **Factual Background[2]**

Cross worked at the National Archives and Records Administration (NARA) for 35 years,

the last 30 of which she held the position of Management Consultant. Doc. 45 ("SUMF") ¶ 1. On

February 28, 2019, Cross abruptly resigned via email, effective the next day. *Id.* ¶ 4. Not long

before her retirement, she had contacted the EEO counselor's office and raised discrimination

complaints against several NARA managers—Donald Greenlee, her immediate supervisor, along with

his supervisors, Jason Hardy (her former supervisor) and Scott Levins. *Id.* ¶¶ 5–6, 12–14, 20, 23, 25.

---

[1] Edward Forst became acting Archivist of the United States on April 3, 2026. Pursuant to Federal Rule of Civil Procedure 25(d), Forst is substituted for his predecessor, Colleen Shogan.

[2] The facts in this section are undisputed, largely due to Cross's failure to object to the bulk of the SUMF. *See* Docs. 45, 51; E.D. Mo. L.R. 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

Specifically, Cross claims that these supervisors discriminated against her on the basis of age and retaliated against her through conduct fall into two broad categories: (1) making her work environment more difficult,[3] and (2) excessive criticism.[4] *Id.* ¶ 30. After receiving a rating of "unacceptable" on several reviews for work completed in 2017 and 2018, Docs. 46-3, 46-5, 46-6, Cross voluntarily resigned before any other actions were taken against her, SUMF ¶ 4; Doc. 54 ¶ 115. In the past, she has filed numerous EEOC complaints and several lawsuits in this Court. SUMF ¶¶ 25–32, 34–35.

## II.    Procedural Background

In January 2019, Cross filed her latest EEOC complaint alleging age discrimination and retaliation. Doc. 46-1 at 2. After receiving a right-to-sue letter, *id.* at 12–13, Cross brought this action in November 2023. Doc. 1. Then-Defendant Shogan filed an answer to the Complaint, and the Court entered a case-management order. Docs. 9, 10. Following discovery and an unsuccessful mediation, Doc. 35, Forst moved for summary judgment, Doc. 44. Cross filed a cross-motion for summary judgment, Doc. 47, which the Court struck as untimely because Cross requested neither an extension nor leave to file out of time, Doc. 48. The motion for summary judgment became ripe in February 2026. Doc. 52, 53.

Forst argues that Cross fails to make a prima facie case of age discrimination or retaliation, even drawing all inferences in her favor. Doc. 46 at 4–8, 11–14. Moreover, even if she had, Cross cannot show that NARA lacked a legitimate, nondiscriminatory justification for its actions. *Id.* at 9–10. Cross's rebuttal is brief, alleging that there are sufficient material factual disputes requiring denial of Forst's motion for summary judgment. Doc. 52 at 1.

---

[3] This category includes Cross's claims that: she was not allowed to take classes pertaining to her job, her supervisors excluded her from work-related meetings and decisions, her office space physically isolated her from teammates, she worked with a lack of guidance, her co-workers speculated about her retirement, her supervisors and co-workers taunted her, and she received a lack of responses to her work-related questions. Doc. 45 ¶ 30.

[4] This category includes Cross's claims that: supervisors gave her more detailed "critical elements" than her co-workers, she completed work withheld from publication, and her work was increasingly scrutinized and criticized. Doc. 45 ¶ 30.

**LEGAL STANDARD**

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When deciding a motion for summary judgment, a court is required to view disputed facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor." *Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 597 (8th Cir. 2021) (citation omitted). Courts may not "weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted). Instead, "the focus is on whether there are genuine issues of material fact for trial." *Sherr*, 999 F.3d at 597 (citation omitted). "A genuine issue for trial exists when a reasonable jury could return a verdict for the nonmoving party." *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 620 (8th Cir. 2025) (quotation omitted). "Substantive law in the relevant area dictates which facts are material, as only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Sherr*, 999 F.3d at 597 (quotation and alteration omitted). While the initial burden to prove summary judgment rests with the movant, once the motion is properly supported, "the plaintiff has an affirmative burden to designate specific facts creating a triable controversy." *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 714 (8th Cir. 2004).

**DISCUSSION**

While Cross identifies several minor factual disputes with Forst's SUMF, none are material, and the remaining undisputed facts make it clear that Cross has no viable age-discrimination claim or retaliation claim. Cross was not meeting NARA's legitimate performance expectations, and there was no adverse employment action taken against Cross before she voluntarily retired in 2019. The Court will first tend to several housekeeping matters before addressing Cross's substantive claims.

3

## I.   Initial Housekeeping

Firstly, as noted above, Cross has admitted the majority of the facts in Forst's SUMF by not specifically opposing them. *See* E.D. MO. L.R. 4.01(E). And even many of the "contested" facts stem from Cross's misleading excerpts from deposition transcripts. *See, e.g.*, Doc. 54 ¶ 63. Indeed, some of the omitted portions of the transcript would warrant the consideration of sanctions if this case were to continue. *See also McGehee v. Synchrony Bank*, No. 4:26-CV-345-MTS, 2026 WL 775887, at *1 n.* (E.D. Mo. Mar. 19, 2026) ("Though Plaintiff is *pro se*, she still may be sanctioned as Rule 11 provides."). While Forst appears to have contextualized or rebutted the vast majority of Cross's opposing facts, the Court will consider Cross to have sufficiently opposed portions of paragraphs 30, 33, 43, 47, 63, 111, and 114–17 in the SUMF because she is a self-represented litigant. However, as explained below, none of the disputes are over *material* facts because none dispute her deficient performance or the lack of an adverse employment action.

Next, as part of her summary-judgment opposition, Cross once again attempted to file her untimely motion for summary judgment without leave. The Court previously rejected this filing because Cross submitted it after the dispositive-motion deadline without even attempting to show good cause. Doc. 48; *see Cheeks v. Belmar,* 162 F.4th 899, 907 (8th Cir. 2025) (emphasizing that the application of the good-cause standard "not optional"). Had Cross requested an extension or justified her untimeliness, the Court may well have allowed the filing. But the Court will not permit Cross to circumvent this requirement by, once again, filing the untimely motion without leave.

Lastly, despite primarily alleging discrimination based on age, Cross's Complaint asserts claims exclusively under Title VII, Doc. 1 ¶¶ 79–145, which does not cover age discrimination, *see* 42 U.S.C. § 2000e-2(a)(1) (forbidding discrimination in hiring and firing based on "race, color, religion, sex, or national origin"). At times, Cross has referenced race and sex, but she exhausted

4

her claims of discrimination only on the basis of age. *See* Doc. 46-1 at 2, 10. Because "a document filed pro se is to be liberally construed," *see Rivera v. Bank of America, N.A.*, 993 F.3d 1046, 1050 (8th Cir. 2021), the Court will treat Cross's Complaint as if it asserted ADEA claims.[5]

## II.     Age Discrimination

With that housekeeping complete, the Court turns to Cross's age-discrimination claims. Doc. 1 ¶¶ 82, 88, 108, 117, 143. These claims fail because Cross does not establish any adverse employment action or that she met her employers' legitimate performance standards before she voluntarily retired in 2019.

The ADEA provides that "all personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a)(1). Cross "must first make out a prima facie claim of age discrimination by establishing that '(1) she was at least forty years old, (2) she was meeting her employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) similarly[] situated employees outside the class were treated more favorably.'" *Clayton v. U.S. Postal Serv.*, No. 4:23-CV-1186-SRC, 2025 WL 917197, at \*9 (E.D. Mo. Mar. 26, 2025) (quoting *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007)). The burden then shifts to Forst to show that there was a "legitimate, nondiscriminatory reason for [his] actions." *Id.* If Forst succeeds at step two, then the burden once again shifts back to Cross "to show a genuine issue of material fact that [Forst's] stated reason for the action was pretextual." *Id.*

Here, Cross's claims fail at step one. She fails to establish either that she met her employer's legitimate performance expectations (the second prong) or that she suffered an adverse employment action (the third prong). As such, Cross has failed to make a prima facie case.

---

[5] To the extent Cross did intend to raise claims of race or sex discrimination despite her failure to exhaust, the Court's analysis below is equally applicable because "claims of discrimination brought under Title VII and the ADEA are subject to the same analysis." *Robinson v. Urb. Strategies, Inc.*, No. 4:25-CV-863 CDP, 2026 WL 369352, at \*2 n.2 (E.D. Mo. Feb. 10, 2026) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995)).

### a. *Employer's Legitimate Performance Expectations*

Caselaw on the performance prong is fairly sparse in the Eighth Circuit. But courts generally have held that employees fall short of legitimate performance expectations where they fail to follow instructions or otherwise perform at required standards. *See e.g.*, *Mani v. Becerra*, 2025 WL 43172, at *6 (D. Md. Jan. 7, 2025) (finding failure to meet employer's expectations where the employee did not follow instructions or perform to agency standards); *Gibson v. Interstate Blood Bank ADP-UCS Bio-Blood Component*, 2014 WL 3082708, at *9–10 (N.D. Ind. July 7, 2014) (same where employee did not perform required duties). Here, undisputed facts in the record make clear that Cross fell short of NARA's legitimate performance expectations.

Cross received three evaluations from two supervisors in 2018, each of which found that she was failing to meet NARA's expectations. *See* Docs 46-3, 46-5, 46-6. The first—a mid-year evaluation from Hardy—indicated that Cross was "below fully successful" and noted several performance shortcomings. *See* Doc. 46 at 6; Doc. 46-3. Later that year, after Greenlee took over her supervision, Cross received an interim evaluation (standard practice when an employee is reassigned). Doc. 46-5 at 1; Doc. 45 ¶ 52. That evaluation also found Cross's performance "unacceptable" for the same reasons as her mid-year review. Doc. 46-5 at 1. Later in 2018, she received another "unacceptable" evaluation, with the evaluation noting discrepancies in data Cross was tasked with monitoring, her failure to review or validate certain contract information, and her lateness in handling certain tasks, Doc. 46-6 at 2–4. Cross offers no evidence rebutting these assessments or showing that she was meeting her employer's legitimate performance expectations. While she seemingly argues that performing these assessments was an attempt to drive her out, *see* Doc. 51 at 5–6, that argument fails for the reasons set out below. Accordingly, Cross's age-discrimination claim fails on this basis alone.

### b.   *Adverse Employment Action and Constructive Discharge*

Even if Cross had shown that she was meeting legitimate performance expectations, she separately fails to establish any adverse employment action. While Cross never explicitly makes this argument at summary judgment, she gestures to it in multiple counts of her complaint, Doc. 1 ¶¶ 21, 84, 90, 110, 119, 145. The Court liberally construes her Complaint to have alleged that she suffered constructive discharge through her to voluntarily retirement from NARA. *See* Doc. 1 ("The standards set for Ms. Cross were essentially to force her to resign/retire . . . ."). But even drawing all reasonable inferences in her favor, Cross has not identified anything in the record to show that her decision to voluntarily retire amounted to a constructive discharge.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015) (quotation omitted). And "not everything that makes an employee unhappy is an actionable adverse action." *Ellis v. Donahoe*, No. 4:13-CV-238-CDP, 2014 WL 7335161, at *5 (E.D. Mo. Dec. 19, 2014) (citation omitted). Indeed, "minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Id.* (citation omitted). And the record is bare of any indication that she experienced any "material employment disadvantage." *Id.*

Cross alleges that she was forced into early retirement by fear of losing her job. Doc. 1 ¶ 78. Generally, voluntary retirement is not considered an adverse employment action. *Rickard v. Swedish Match N. Am.*, 773 F.3d 181, 186 (8th Cir. 2014). However, voluntary retirement can amount to an adverse employment action if it is the result of a "constructive discharge." *Id.* Proving a constructive discharge requires the employee to demonstrate that "(1) a reasonable person in [her] situation would find [her] working conditions intolerable, and (2) the employer intended to force [her] to quit." *Id.* Cross has failed to satisfy either prong.

7

There is nothing to suggest that a reasonable person in Cross's shoes would find their working conditions intolerable. Cross raises many issues in an effort to prove the conditions were unbearable, including: (1) her co-workers asking about her retirement, (2) lack of guidance, (3) lack of responses to work-related questions, (4) exclusion from work-related meetings, (5) being assigned to a purportedly inexperienced supervisor, (6) having completed work withheld from publication, (7) taunting from co-workers, and (8) physical isolation from other team members. But these allegations are either directly undermined by the undisputed facts in the SUMF or represent examples of the "petty slight[s] or minor annoyance[s] that do[] not rise to the level of an adverse employment action." *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 987 (8th Cir. 2011) (citation omitted); *see also* SUMF ¶¶ 61–91, 99–113.

Her remaining allegations, while perhaps more significant, still do not prove that her working conditions were intolerable. Cross claims that she: (9) was not allowed to take classes pertaining to her job, (10) was given more critical elements than other team members, (11) retired in fear of potential job loss, and (12) that her work was scrutinized and criticized more than others. SUMF ¶ 33, 46-1 at 4. The final three allegations stem from the fact that she was failing to meet her superiors' expectations, and the increased detail in her evaluations reflected her superiors' attempts to provide explicit guidance to try and make her a more productive member of their team. SUMF ¶¶ 92–98. But "[a]n unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipient's employment." *Warr v. Hagel*, 14 F. Supp. 3d 1244, 1252 (E.D. Mo. 2014) (citation omitted). And there is no evidence indicating that Cross's employment was negatively affected by these evaluations. While she asserts that receiving a rating of "Unacceptable" placed her at risk of potential dismissal at some point down the road, Doc. 51 at 3–7, she does not rebut the SUMF's

assertion that none of her supervisors believed she was at risk of termination, SUMF ¶¶ 115, 116, 118. And even assuming that being denied the opportunity to take classes was an adverse employment action, *but see Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006), the record clearly shows a non-pretextual rationale for why she was not accepted for the classes (i.e., they were not appropriate for her skill level or experience). *See* Doc. 54 ¶ 43.

Cross further argues that NARA's failure to follow its own guidance proves that her supervisors were attempting to force her into retirement. Doc 51 at 5–7. True, a plaintiff can demonstrate pretext for an adverse employment decision by showing "that an employer failed to follow its own policies." *Findlator v. Allina Health Clinics*, 960 F.3d 512, 515 (8th Cir. 2020) (citation omitted). And Forst does not dispute that the supervisors failed to follow the letter of NARA's policy, which requires a "memo of expectations" for any underperforming employee which lays out ways for them to improve. Doc. 53 at 11. But even assuming that this failure cleared the first two steps of the analysis, Cross still fails to demonstrate a dispute of material fact that the failure to follow this policy was pretextual age discrimination (and the same is true for her claims of a hostile work environment and retaliation). Indeed, the detailed feedback Cross received from her superiors was roughly equivalent to what was required by a "memorandum of expectations." *Compare* Doc. 51 at 7 (excerpts of NARA interim guidance setting out requirements for a memorandum of expectations), *with* Docs. 46-3 (Cross's 2018 mid-year progress review), 46-5 (Cross's interim performance review), 46-7 (Cross's 2018 annual review). Accordingly, Cross has failed to demonstrate a dispute of material fact sufficient to defeat summary judgment on her age-discrimination claims.[6]

---

[6] Further, even if Cross had met her burden of establishing a prima-facie case, the Court notes that Forst has demonstrated legitimate, non-discriminatory reasons for the supervisors' actions, and Cross has done nothing to show that the actions were pretextual.

### III.    Hostile Work Environment Claim

Cross also claims that she suffered "harassment," which appears to be a claim of "hostile work environment (non-sexual)." *See* Doc. 1 ¶ 82, 88, 108, 117, 143; *see also* Doc. 46 at 4. To demonstrate a hostile work environment, Cross must show that she was "a member of the class of people protected by the statute, that [she] was subject to unwelcome harassment, that the harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment." *See Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 921–22 (8th Cir. 2018) (quotation omitted). While Forst concedes that Cross is a member of a protected class, he is correct that Cross fails to demonstrate any of the remaining factors. Doc. 46 at 11. Aside from some alleged comments from her co-workers asking about her retirement, there are no facts in the record that substantively link any purported harassment on Cross's part to her age. As for the retirement comments, Cross offers no support in the record other than her bare allegations, nor does she dispute that none of her superiors recall hearing about any such comments. SUMF ¶¶ 107–112. More importantly, "[n]ot all unpleasant conduct creates a hostile work environment. Rather, the plaintiff must show that . . . the conduct was severe and pervasive." *Parker v. United States Dep't of Agric.*, 129 F.4th 1104, 1113 (8th Cir. 2025) (quotation omitted). And absent "anything more than bare allegations, [Cross] cannot establish the required nexus to prove her harassment claims." *Id.* (quotation omitted). Accordingly, the Court will grant summary judgment on this claim.

### IV.    Retaliation Claim

Cross's last claim is for retaliation. Doc. 1 ¶¶ 81, 87, 108, 113, 143. While the Complaint is unclear as to whether Cross is bringing this claim under Title VII or the ADEA, the two statutes are substantively identical, and the analysis is the same. *See* 42 U.S.C. § 2000e-3; 29 U.S.C.

10

§ 623(d); *Eastman v. Donahoe*, No. 4:10-CV-906-FRB, 2011 WL 5374729, at *6 (E.D. Mo. Nov. 8, 2011) (applying the same standard to ADEA and Title VII retaliation claims). To prove a claim for retaliation, Cross must show that "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Hester v. Dep't of Treasury*, 137 F.4th 684, 689 (8th Cir. 2025) (citation omitted). Cross's previous discrimination complaints are a protected activity. *See* SUMF ¶ 3; *Parker*, 129 F.4th at 1114. But for the reasons stated above, there is no evidence that Cross suffered an "adverse employment action," let alone one that was causally related to her prior EEOC complaints, warranting summary judgment on her final claim.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant Edward Forst's [44] Motion for Summary Judgment. A separate Judgment will accompany this order.

So ordered this 19th day of May 2026.

_____
ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

11